## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | **Docket No.: 18 CR 20773-001** |
| **v.** | : | **Hon. Kathleen M. Williams** |
| | : | **Sentencing:  April 16, 2019** |
| **JEROME ALLEN** | : | |

### MEMORANDUM IN AID OF SENTENCING

Short of never having committed the offense for which this Court will sentence him, it is difficult to imagine what else Jerome Allen could have done to make amends and recompense the community for his wrong-doing.  He waived an indictment, he admitted his responsibility through a guilty plea before this Court on October 3, 2018[1] (less than one week from his September 28, 2018, arrest[2]), and he is cooperating with the government against, *inter alia*, Philip Esformes, including testifying not only shrouded in the secrecy of a grand jury, but even in a public trial.[3]

As he admitted under oath in open court on October 3, 2018, in December, 2014, a month short of his 42nd birthday, Mr. Allen engaged in illegal conduct for the first time in his life.  As a result, beyond any sentence imposed by this Court, henceforth Mr. Allen's previously unblemished history will be marred by a felony conviction, and he will bear the moniker "convicted felon."  A college graduate, and formerly a coach at an Ivy League institution, and

---

[1] *See* PreSentence Investigation Report at p. 4, ¶1.

[2] *See* PreSentence Investigation Report at p. 11, ¶23.

[3] *See* PreSentence Investigation Report at p. 4, ¶3.

currently, and for the past four years, an assistant coach for the Boston Celtics basketball team, Mr. Allen had no prior criminal or juvenile record before this case.[4]  In Mr. Allen's case, the mere pendency of this case, the plea he has entered, and the damning scar he will forever bear as a convicted felon will exact a tremendous toll.

In the post-*Booker* universe, the Court's mandate is to consider seven factors in determining a sentence that is "sufficient, but not greater than necessary" to meet the four purposes of sentencing, *i.e.*, to "reflect the seriousness of the offense, . . . promote respect for the law, . . . and provide just punishment for the offense;   . . . . afford adequate deterrence to criminal conduct; . . . protect the public from further crimes of [Mr. Allen]; and . . . provide [Mr. Allen] with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. §3553(a)(2).  By the terms of the plea agreement which contemplated a final guideline range in Zone B (prior to a motion from the government based on Mr. Allen's substantial assistance), the parties necessarily agreed that a sentence of home detention, or even intermittent confinement (that would allow him to maintain his employment with the Boston Celtics) would meet the seven statutory factors relevant to sentencing.  For the reasons set forth below and given his substantial assistance to the government Mr. Allen should be sentenced to a term of probation as is authorized by statute[5] because such a sentence will more than suffice to achieve the statutorily mandated requirements of sentencing.

---

[4]*See* PreSentence Investigation Report at p. 13, ¶¶40,41.

[5] *See* PreSentence Investigation Report at p. 24, ¶81.

## The Nature and Circumstances of the Offense and Mr. Allen's History and Circumstances

The nature and circumstances of the offenses to which Mr. Allen admitted his involvement reveal that while Philip Esformes was involved in "several schemes to defraud health care benefit programs" over an eighteen-year period from 1998 to 2016,[6] Mr. Allen had very limited involvement with Mr. Esformes for a small fraction of that time, only toward the end of the eighteen years Mr. Esformes was defrauding the federal government, when the latter approached Mr. Allen[7] about securing the former's son a place at the University of Pennsylvania. *See* PreSentence Investigation Report at p. 9, ¶ 16 ("in the course of a year and a half" Esformes engaged in money laundering by paying Mr. Allen to assist securing the admission of the former's son to the University of Pennsylvania).   Additionally, when considering the nature and circumstances of the offense, it is relevant that Mr. Allen, though wrongfully, was acceding to a request made by Mr. Esformes, and did not himself, initiate or devise the illegal scheme.

Regarding his "history and characteristics," 18 U.S.C. §3553(a)(1), Mr. Allen's history bespeaks someone who suffered major adversities as a youngster and yet impressively overcame them.  Mr. Allen's parents married when he was five years old and divorced when he was ten.[8] His father was a drug addict who abused Mr. Allen both mentally and physically and who also physically abused Mr. Allen's mother.[9]  Indeed, Mr. Allen witnessed both his father's drug abuse as well as his father's physical abuse of his mother.[10]   Upon his parent's separation Mr. Allen

---

[6] *See* PreSentence Investigation Report at p. 9, ¶16.

[7] *See* PreSentence Investigation Report at p. 9, ¶17 (stating that "**at Esformes' request** [Mr.] Allen recruited Morris [Esformes] as a student athlete") (emphasis supplied).

[8] *See* PreSentence Investigation Report at p. 14, ¶48.

[9] *See* PreSentence Investigation Report at p. 15, ¶48.

[10] *Id.*

lived with his mother and sister in his maternal grandparents' home in a "dilapidated" home with nineteen family members.[11]  Notwithstanding these major adversities, impressively Mr. Allen secured admission to an Ivy League institution, *i.e.*, the University of Pennsylvania, where he matriculated and from which he ultimately graduated.[12]  Although Mr. Allen did not graduate from the University of Pennsylvania until 2009, he spent fourteen years, between 1995 and 2009, playing professional basketball around the world.[13]

Mr. Allen's parenting of his twin children also speaks well of him as a role model and an inspiration to his children.  His 23-year old twins are accomplished in their own rights, one on a fellowship mission in South Africa with a foundation "to promote the education and development of disadvantaged youth through sport," and the other a graduate of the University of Pennsylvania with a degree in nursing, who has endured her own health travails.[14]  To the extent the "apple does not fall far from the tree," Mr. Allen's older children's accomplishments speak highly of him as a parent and as someone his children have emulated.  Separately, from his second and current marriage, Mr. Allen has two children, ages 17 and 9, each of whom seems to be on track, also a testament both to Mr. Allen and to his wife.[15]  Significantly and to his credit, long before this case, and more than twenty years ago, Mr. Allen established an organization to "assist underprivileged youth through sports and education."  PreSentence Investigation Report at p. 18, ¶60.  In short, Mr. Allen's accomplishments in raising four children, as well as his civic

---

[11] *Id.*

[12] *See* PreSentence Investigation Report at p. 18, ¶59.

[13]*See* PreSentence Investigation Report at p. 16, ¶52.

[14] *See* PreSentence Investigation Report at p. 15, ¶50.

[15] *See* PreSentence Investigation Report at p. 16, ¶51.

mindedness as reflected by the non-profit, JBA Advisors he started, make clear that his relatively brief involvement in the instant offense was a complete aberration from his character and his 46-year past.

As well, Mr. Allen positively impacted scores of lives, particularly through his involvement in sports. We attach hereto several letters of support in aid of Your Honor's sentencing decision.  One theme that is evident in reading all the letters is that Mr. Allen has always been much more than a coach.  He has consistently gone beyond the job description of coach to assist young men, often from difficult circumstances – similar to Mr. Allen.  In short, Mr. Allen has acted as mentor and father figure.  Fran Dunphy, Mr. Allen's former college coach, makes the point.  He writes

> It has been my personal experience, first recruiting  Jerome when he was in high school, then his coach for  4 years at Penn, and for the past 23 years as his good friend, that Jerome has always been deeply appreciative of the opportunities that Penn afforded him. He has devoted countless amounts of his time and money to help kids, born in similar circumstances as he was to see his life as an example of what is possible for them.  It has always been deeply important to Jerome to make a meaningful contribution to the community and I know he has done so.

Several former players of Mr. Allen wrote as well. As Tony Hicks describes, after Mr. Allen counseled him with regard to reuniting with Mr. Hicks' absentee father, "Coach Allen has been a role model for me from the day…I met him and will continue to be until I leave this earth."  Mr. Allen's former player and now-Professional basketball player, Miles Jackson-Cartwright, adds, "Jerome has challenged me in ways that I've never been pushed before.  As appreciative as I am for all of the pick and roll tactics  and defensive schemes that he instilled

upon me, I will always be indebted to him for how crucial he was in my growth to becoming a man."  And, one former player, who is now enrolled in dental school, wrote, "Coach Allen inspired me to push myself physically and mentally in ways that eventually allowed myself and the team to excel."

In describing Mr. Allen's founding of Helping Our Own Develop ("HOOD") to assist underprivileged youth, "Jerome is unselfish to a fault.  He cares more for others than himself. He will give his last if it means helping someone else in need."  Indeed, Mr. Allen used his personal income to ensure that parents never had "to pay for any of the expenses associated with HOOD."  Jerome has always been both unselfish and generous to a fault.  And the Court has ample reason to believe that Mr. Allen's behavior that brings him before Your Honor is aberrational.

Perhaps the most moving letter is from a former teammate of Mr. Allen, Mr. Dan Leibovitz, who writes:

> Jerome and I spent a great deal of time together as young adults in Jerome's mother's home in the Germantown section of Philadelphia.  Jerome's mother is an amazing woman, who worked as a housekeeper in hotels in order to support the family.  Jerome lived with anywhere from 12-20 people in a tiny, roach-infested row home.  I can recall a refrigerator that was empty with the exceptions of juice.  I remember multiple relatives bathing in the same water on after another in order to save money.  I remember multiple broken railings, failing heat, drug use by a few adults and darkness.  In the summer time, we worked together at a print shop for minimum wage salary.  I was fortunate enough to be able to spend my paycheck on my own wants and needs.  Jerome did not have that luxury.  I can recall him handing most, if not all, of his mney over to his mother.  Most 16

6

year-olds do not see life through this lens or have the maturity to give back to their parents in this way.

From these humble beginnings, Jerome has become a high achiever…[H]e is a graduate of Episcopal Academy and University of Pennsylvania's Wharton School of Business, a former professional athlete, former head coach and current assistant coach in the NBA. Jerome is an outstanding father and husband.  His two oldest children are now Penn graduates, currently serving in communities in Africa.  Jerome's two younger children undoubtedly have similar aspirations. I know much time, energy and resources Jerome has invested in his children.  It brings a tear to my eye to see their success when I consider where this story began.  Jerome has truly chaged the course of his entire family's future with his love and care.

There is reason for optimism about Mr. Allen's future because all indications are that he will succeed and fully comply with any conditions imposed by the Court.  Not only did he spend more than four decades without any illegal behavior, but since the inception of this case, Mr. Allen has been released on conditions and he has complied with them all.

## The Guidelines Calculations

At the time Mr. Allen entered his guilty plea, less than a week after his arrest, the government and undersigned counsel agreed that under the applicable guidelines, Mr. Allen was responsible for a loss amount of $18,000 based upon funds Esformes transferred into a bank account controlled by Mr. Allen.  As a result, the parties agreed that the base offense level for Mr. Allen's offense of conviction was 12, based upon an offense level of 8, pursuant to U.S.S.G.

§2B4.1(a), and a four-level increase because the value of the unlawful payment to Mr. Allen was between $15,000 and $40,000. U.S.S.G. §§2B4.1(b)(1)(B) and 2B1.1(b)(1)(C). That offense level was further increased by one because the conviction was under 18 U.S.C. §1957, and it was then reduced by a total of three levels for Mr. Allen's acceptance of responsibility. U.S.S.G. §3E1.1.

Because Mr. Allen has no prior criminal history whatsoever, *see* Note 4 *supra*, and the parties agreed that the total adjusted offense level was 11, before his substantial assistance, Mr. Allen's guideline range was 6-12 months, in Zone B of the Sentencing Guideline Table. At this juncture, however, the government has filed a motion pursuant to U.S.S.G. §5K1.1, based upon Mr. Allen's substantial assistance to law enforcement. As a result, the final adjusted guideline range is even lower than 6 to 12 months.

In contrast to the parties' agreement, the PreSentence Investigation Report calculated a final adjusted offense level 16. *See* PreSentence Investigation Report at p. 13, ¶¶30-39. The discrepancy between the parties' agreed calculations and the PreSentence Investigation Report's calculations is attributable to "relevant conduct" erroneously calculated by the PreSentence Investigation Report for which Mr. Allen should not be held accountable and which has not been established by a preponderance of the evidence as required. *See* PreSentence Investigation Report at p. 10, ¶¶20-21. The author of the PreSentence Investigation Report calculated the relevant conduct based upon statements made by Mr. Allen during a conversation that supplemented the PreSentence Investigation interview. While the PreSentence Investigation interview occurred in person and with undersigned counsel present on the very day of Mr. Allen's guilty plea before the Court, significantly the supplemental interview occurred months later, *i.e.*, on January 29, 2019, by telephone and without undersigned counsel's participation or

8

presence.  *See* PreSentence Investigation Report at p. 14, ¶46.  Thus the relevant conduct calculated in the PreSentence Investigation Report comes from an unsworn, uncounseled, telephonic admission, witnessed by no one, not based on a factual proffer to which Mr. Allen admitted under oath in open court with his counsel present and for which no reliable evidence has been adduced permitting the Court to find by a preponderance of the evidence that Mr. Allen is responsible for an aggregate loss of $243,000.

There has been growing judicial antipathy for the "judicial fact-finding" involved in application of the "relevant conduct" adjustment to an offender's offense level.[16]  *See e.g.*, *Jones v. United States*, 135 S.Ct. 8 (Mem.) (2014) (Scalia, J., dissenting in the denial of *certiorari*) ("any fact necessary to prevent a sentence from being substantively unreasonable  -- thereby exposing the defendant to the longer sentence – is an element that must be either admitted by the defendant or found by the jury.  It **may not** be found by a judge."), citing *Alleyne v. United States*, 570 U.S. ___, 133 S.Ct. 2151 (2013), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Cunningham v. California*, 549 U.S. 270 (2007).  *See also*, *United States v. Bell*, 808 F.3d 926 (D.C. Cir. 2015) (Kavanaugh, concurring in the denial of rehearing *en banc*), *United States v. Sabillon-Umana*, 772 F.3d 1328, 1331 (10th Cir. 2014) (Gorsuch, J.) (questioning the constitutionality of increasing a defendant's sentence "without the aid of a jury or the defendant's consent")[17]   In this case, Mr. Allen's purported uncounseled, telephonic admission, not made under oath or in open court, cannot suffice as his consent nor as an admission upon which to base a relevant conduct calculation under U.S.S.G. §1B1.3.

---

[16]There has been a similar skepticism regarding "judicial fact-finding" in other contexts as well.  *See e.g.*
[17] While many of the cases expressing skepticism regarding application of the relevant conduct adjustment to a base offense level occur in the context of acquitted conduct, the rationale is equally applicable where, as in Mr. Allen's case, the relevant conduct calculation is made based on an unsworn, uncounseled, telephone conversation, rather than under oath, in open court, with counsel present.

In *Obasohan v. U.S. Attorney General*, 479 F.3d 785, (11th Cir. 2007), the Eleventh
Circuit found that a restitution order based on conduct alleged only in the PreSentence
Investigation Report could not provide the factual basis to construe the accused's conduct as
constituting an aggravated felony thereby making him subject to removal.  Unlike "relevant
conduct" under U.S.S.G. §1B1.3, removal requires an actual conviction for an aggravated felony.
Nonetheless it is instructive that the Eleventh Circuit deemed "additional conduct that was
alleged only in the PSI" and which the accused "did not admit [or] adopt" and to which he did
not assent, insufficient to form a factual basis upon which to construe the offense of conviction
as an aggravated felony.   Similarly, in Mr. Allen's case, his unsworn purported telephonic
statement that he was responsible for an aggregate loss of $243,000, made without the benefit of
counsel, should not suffice for the Court to adjust his base offense level upward based upon
"relevant conduct."  *See also*, *United States v. Lopez*, 549 Fed. Appx. 909 (11th Cir. 2013)
(unpublished opinion)[18] (vacating sentence and remanding for sentencing where enhanced
offense level was based on loss amount calculation in the Pre-Sentence Investigation Report, to
which accused objected, and about which probation officer was neither sworn nor testified).


### There Is No Need for A Sentence That Removes Mr. Allen from the Community

There is nothing that will be gained by a sentence greater than probation, that will not
have been achieved by one in that range.  At a cost of $31,977.65 per year to confine an inmate

---

[18] CTA11 Rule 36-2 permits citation of unpublished opinions, not as binding precedent, but as persuasive
authority.

in the Bureau of Prisons,[19] incarcerating Mr. Allen is not worth the cost and will not achieve anything that will not have been achieved through a probationary sentence.

A probationary sentence for Mr. Allen will adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.  18 U.S.C. §3553(a)(2)(A).  Such a sentence also will afford adequate deterrence to any future illegal behavior by Mr. Allen, 18 U.S.C. §3553(a)(2)(B), and protect the public from any additional criminal behavior by him.  18 U.S.C. §3553(a)(2)(C).  Finally, there is no educational or vocational training or other correctional treatment that will be afforded Mr. Allen that cannot be provided by a probationary sentence.  Thus, nothing will be gained by a sentence greater than probation that will not be achieved through a term of probation.

### A Probationary Sentence Is Consistent With the Kinds of Sentences Available and the Applicable Sentencing Ranges

After its decision in *Booker*,[20] the Supreme Court has made clear that the non-binding sentencing guidelines are a starting point, but not the only consideration, in determining an appropriate sentence in a given case.  *See Gall v. United States*, 552 U.S. 38 (2007).  *See also Kimbrough v. United States*, 552 U.S. 85 (2007).  Indeed, the Court is not permitted to presume that the applicable sentencing guideline range is reasonable.  *Nelson v. United States*, 555 U.S. 350, 352 (2009) ("The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable") (emphasis in original).  As the Supreme Court made clear in *Gall*, the Court is required to consider whether the factors under 18 U.S.C. §3553(a) support any

---

[19]*See* https://www.federalregister.gov/documents/2016/07/19/2016-17040/annual-determination-of-average-cost-of-incarceration  (last visited October 4, 2018) (stating that in FY 2015, the annual cost of incarcerating an inmate in the Bureau of Prisons was $31,977.65, or $87.61 per day)

[20]*See United States v. Booker*, 543 U.S. 220 (2005)

proposed sentence and, rather than presume the reasonableness of the suggested guideline ranges, instead make an individual assessment based upon the facts presented regarding a given case.[21] *See United States v. Raby*, 575 F.3d 376 (4ᵗʰ Cir. 2009) (vacating and remanding for resentencing where sentencing court applied a presumption of reasonableness to the guideline range). In Mr. Allen's case, particularly after his substantial assistance to the government, a sentence of probation is "reasonable" and consistent with the statutory purposes of sentencing. *Kimbrough*, *supra,* 552 U.S. at 111.

<u>**Policy Statements, Sentencing Disparities, and Restitution**</u>

A probationary sentence in this case would not contravene any policy statements of the United States Sentencing Commission, nor would it be far removed from sentences for others accused of similar conduct and with similar records, particularly considering that Mr. Allen's previously unblemished record will now be forever scarred with a felony conviction that will follow him for the rest of his life.

<u>**Conclusion**</u>

As the Supreme Court made clear more than twenty years ago, "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81, 113 (1996). In Mr. Allen's case his background reflects his significant demonstrated potential and his impressive record of accomplishments and the way he has

---

[21]The Court in *Gall*, was also explicit in <u>rejecting</u> a requirement that to impose a sentence outside the guidelines, the sentencing court had to find "extraordinary circumstances" or use a "rigid mathematical formula" to "determine[] the strength of the justifications required for a specific sentence" because that would be tantamount to "an impermissible presumption of unreasonableness for sentences outside the Guidelines range." *Gall v. United States*, *supra*, 552 U.S. at 47.

expeditiously resolved this case, and assisted the government demonstrate that a sentence of probation is "sufficient, but not greater than necessary" to meet the statutory purposes of sentencing in his case.

**Dated: April 8, 2019**                                    Respectfully submitted,


                                                           /s/ Ronald S. Sullivan Jr.
                                                           _____
                                                           Ronald S. Sullivan, Jr.
                                                           On Behalf of Jerome Allen
                                                           712 H Street, N.E., Suite 1354
                                                           Washington, D.C.  20002
                                                           (202) 873-9120
                                                           **rsullivan@ronaldsullivanlaw.com**


                                                           /s/ Michelle Medina
                                                           _____
                                                           Michelle Medina
                                                           On Behalf of Jerome Allen
                                                           40 SW 13th St, Suite 901
                                                           Miami, FL 33130
                                                           (305) 999-5100
                                                           **michelle@baezlawfirm.com**


### CERTIFICATE OF SERVICE

       This is to certify that a copy of the foregoing Memorandum in Aid of Sentencing and the accompanying attachments have been delivered by electronic mail at Elizabeth.young@usdoj.gov to, Elizabeth Young, Assistant United States Attorney, 1400 New York Avenue, N.W., 8th Floor, Washington, D.C.  20005 on this 8th day of April, 2019.


                                                            /s/ Ronald S. Sullivan Jr.
                                                           Ronald S. Sullivan Jr.